SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**LEWIS S. BURKHART, OSB #082781**
Assistant United States Attorney
Lewis.Burkhart@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

**UNITED STATES OF AMERICA**

**v.**

**URIEL RUIZ-PEREZ,**

**Defendant.**

**3:23-cr-00292-004-IM**

**GOVERNMENT'S SENTENCING MEMORANDUM**

**Introduction**

The defendant worked as a courier for a drug trafficking organization (DTO) that distributed methamphetamine and fentanyl in the Portland, Oregon area. For his minimal role in the organization, the United States recommends a sentence of 41 months, followed by 5 years of supervised release.

/ / / /

/ / / /

**Factual Background**

In early 2023, the DEA and Salem Police Department began investigating a drug trafficking organization (DTO) responsible for transporting methamphetamine, heroin, cocaine, and fentanyl from Mexico into the Salem and Portland, Oregon area. The DTO was directed by a dispatcher located in Mexico who used a U.S.-based phone number to take orders and send Portland-area couriers to complete drug transactions. As part of the investigation, law enforcement obtained court-authorized wiretaps on cellphones used by various codefendants and co-conspirators. (PSR ¶ 20).

On April 11, 2023, a confidential informant ordered one pound of methamphetamine from the Mexican dispatcher. (PSR ¶ 21). DEA agents covertly monitored the transaction. The defendant and another male arrived and parked behind the informant. A male from the defendant's vehicle entered the informant's car and delivered the pound of methamphetamine. (PSR ¶ 22). Agents followed the defendant afterward and learned he was staying at a hotel in Clackamas, Oregon registered in his name. (PSR ¶ 23).

Investigators then obtained a warrant to place a tracker on the defendant's vehicle. On April 13, 2023, agents observed the vehicle traveling south toward California and believed it was headed for a narcotics resupply. The defendant later returned to Oregon and met with another known courier associated with the DTO, placing a bag into that courier's vehicle. (PSR ¶ 24).

In May 2023, the DEA received court authorization to intercept the Mexican dispatcher's communications. In early June, agents learned the dispatcher was coordinating a large resupply. The defendant's vehicle again traveled south to California, remained briefly, and then began driving north toward Oregon. DEA agents requested the Oregon State Police to conduct a traffic stop, and the defendant was pulled over in Linn County on I-5 (PSR ¶ 25).

The defendant denied possessing drugs and refused consent to search the vehicle. (PSR ¶ 26). A drug detection K-9 was deployed and alerted to the presence of narcotics. (PSR ¶ 27). The defendant then admitted he had "something" in the vehicle and asked for a lawyer when further questioned. (PSR ¶ 27).

A subsequent search revealed a large duffle bag containing twenty individually wrapped bindles, each holding approximately one pound of methamphetamine. (PSR ¶ 28). See photos below.





**The Charges and Plea Agreement**

Defendant was charged with Count 1, Count 4, and Count 5 in a 16-count Superseding Indictment. On September 2, 2025, defendant agreed to plead guilty to Count 5, charging that on or about June 10, 2023, in the District of Oregon, defendants Juan Antonio Garcia Santoyo, AKA "Tony" and Uriel Ruiz-Perez (the defendant), did knowingly and intentionally possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable

amount of methamphetamine, its salt, isomers, or salts of its isomers, a Schedule II controlled substance; in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(A)(viii).

At the time of sentencing, the government will dismiss Count 1, which charges the defendant and co-defendants with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code Sections 841(a)(1), (b)(1)(A), (b)(1)(B), and 846, and Count 4, which charges the defendant and Juan Antonio Garcia Santoyo, AKA "Tony" with Unlawful Distribution of Methamphetamine, in violation of Title 21, United States Code Sections 841(a)(1), (b)(1)(A)(viii), and 18 U.S.C. § 2. (PSR ¶ 2).

**Guideline Computations**

| **Count 5: 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii)**<br>**Possession with Intent to Distribute Methamphetamine** | | |
|---|---|---|
| USSG §2D1.1 | Base Offense Level | 30 |
| USSG §2D1.1(a)(5) and USSG §3B1.2(b) | Minor Role Reduction | -4 |
| USSG §3E1.1 | Acceptance of Responsibility | -3 |
| 18 U.S.C. § 3553(a) | Case Resolved in an Expedited Manner | -1 |
| | **Adjusted Offense Level** | 22 |

**Criminal History**

| Date of Conviction | Charge | Jurisdiction | Sentence | Points |
|---|---|---|---|---|
| 1/12/2017 | Burglary | Santa Cruz, California | 180 days | +2 |
| 1/12/2017 | DUII | Santa Cruz, California | Probation | +1 |
| 6/8/2016 | Assault with Deadly Weapon | Santa Cruz, California | 178 days | +2 |

The defendant scores a total of five criminal history points and is a Criminal History Category III. (PSR ¶ 49).

**Government's Recommended Sentence**

The advisory guideline range, accounting for the recommended adjustments, is 41 to 51 months imprisonment. The defendant served as a courier for a drug trafficking organization operating from Mexico into California and Oregon. He transported bulk quantities of narcotics from California to Oregon and delivered smaller, distribution-level amounts to local dealers in the Portland area. Following the June 2023 traffic stop, the defendant ceased involvement in the conspiracy. Investigators did not intercept any calls involving him, nor did they observe him making any drug deliveries. In effect, he dropped off law enforcement's radar.

Although the defendant was a low-level courier and complied with all conditions of pretrial release, he has a notable criminal history in California from 2016 and 2017 and participated in the movement and delivery of substantial quantities of narcotics.

While the Sentencing Guidelines are not binding, district courts must consult them and take them into account. *See United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 767 (2005). The guidelines remain advisory but are among the statutory factors this Court must consider. See 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347–48 (2007). They serve as "the starting point and the initial benchmark" for sentencing and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Gall v. United States*, 552 U.S. 38, 49 (2007); *Rita*, 551 U.S. at 350. As the Supreme Court has noted, the guidelines function as a "lodestone" at sentencing, helping to "cabin" or "anchor" a court's discretion. *Peugh v. United States*, 569 U.S. 530, 531 (2013). And although advisory, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id.*

Considering all relevant facts and § 3553(a) factors, a low-end sentence of 41 months' imprisonment, followed by five years of supervised release, is sufficient but not greater than necessary.

**Conclusion**

Based on the foregoing, the government recommends that this Court impose a sentence of 41 months, followed by a 5-year term of supervised release.

Dated: August 5, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Lewis S. Burkhart*________________
LEWIS S. BURKHART, OSB #082781
Assistant United States Attorney